Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| RAHELIE DE JESÚS HUERTAS Y CARMELO JULIO LÓPEZ ROSARIO<br><br>Apelantes<br><br>vs.<br><br>R & C INVESTMENT PROPERTIES, LLC; REPRESENTADA POR LISA MARIE FOUQUET<br><br>Apelados | TA2026AP00276 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. CA2021CV02158<br><br>Sala: 409<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca, Daños |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de mayo de 2026.

Comparece la parte apelante compuesta por el señor Rahelie De Jesús Huertas y el señor Carmelo Julio López Rosario, solicita la revisión de la *Sentencia* dictada el 18 de diciembre de 2025, notificada el 29 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala de Carolina. El tribunal apelado desestimó la causa debido al incumplimiento de las partes con la cláusula de arbitraje contenido en el contrato objeto del litigio.

Por los fundamentos expuestos en esta sentencia, *revocamos* la sentencia apelada.

**-I-**

El 18 de agosto de 2021, los apelantes instaron una *Demanda* sobre cobro de dinero, ejecución de hipoteca y daños en contra de la parte apelada, R&C Investment Properties, LLC. La parte apelante reclamó el pago de $1,100,000 en principal, más $46,750 en intereses y $110,000 en costas, gastos y honorarios de abogado. El 17 de diciembre de 2021, la parte apelada presentó

una *Contestación a Demanda y Reconvención*. Aunque reconoció la existencia de los contratos relacionados en la demanda, en la reconvención adujo fraude y reclamó daños contractuales. Alegó que, los apelantes representaron poseer todos los permisos gubernamentales necesarios sobre el inmueble adquirido. No es hasta después de intercambiadas las prestaciones, y perfeccionado el negocio que, la parte apelada conoció la supuesta inexistencia de los permisos ministeriales aludidos en su reconvención, y según la parte apelada el negocio previsto a causa de la compra quedó frustrado. Trabada la controversia, el 20 de enero de 2022 la parte apelante solicitó la solución sumaria del pleito a su favor. El 18 de marzo de 2022, la parte apelada presentó oposición a la moción sumaria promovida por la parte apelante. El 29 de marzo de 2022 la parte apelante presentó *Réplica a "Oposición a Moción de Sentencia Sumaria"*, y el 4 de agosto de 2022 solicitó al tribunal la adjudicación de la moción de sentencia sumaria parcial aún pendiente. El 30 de agosto de 2022 el foro primario ordenó a la parte apelante a "presentar certificación registral de la cual surja la inscripción de la hipoteca cuya ejecución solicita". La parte cumplió con la orden del tribunal, presentó el documento requerido el 2 de septiembre de 2022.

El 10 de noviembre de 2022 el foro primario emitió una sentencia sumaria parcial, ordenó el pago de la deuda reclamada en la demanda. El 30 de noviembre de 2022, la parte apelada solicitó reconsideración. El 4 de enero de 2023, el tribunal denegó la petición de reconsideración promovida. Inconforme, la parte apelada presentó un recurso de apelación, solicitó la revocación de la sentencia sumaria parcial emitida por todavía existir cuestiones de hechos en controversia. El 21 de abril de 2023 un panel hermano emitió sentencia (KLAN202300095) revocó la sentencia sumaria parcial del 10 de noviembre de 2022. El panel de jueces

determinó la subsistencia de controversia en torno a los siguientes hechos materiales:

1. La titularidad del inmueble objeto de este pleito a la fecha del otorgamiento de la *Escritura de Hipoteca en Garantía de Pagaré.*

2. Cuáles negocios jurídicos otorgaron las partes con relación a estos hechos.

3. Cuál fue la intención de las partes al otorgar tales negocios jurídicos.

4. Si los permisos de construcción eran la causa contractual para otorgar los negocios jurídicos entre las partes.

5. Cuál fue el valor de tasación del inmueble objeto de este pleito.

6. Si los apelados incurrieron en dolo contractual, y si hubo vicios en el consentimiento y nulidad de la *Escritura de Compraventa.*

7. Si la obligación hipotecaria de R&C está acelerada, vencida y es líquida y exigible.

8. Si la cláusula de arbitraje que pactaron las partes en el Contrato de Compraventa de Membresías aplica a estos hechos.

La parte apelante acudió al Tribunal Supremo (CC-2023-0446) pero su solicitud de *certiorari* fue denegada el 8 de septiembre de 2023. Devuelto el caso al foro de primera instancia, las partes comenzaron el descubrimiento de prueba. Durante la vista del estado de los procedimientos celebrada el 2 de mayo de 2024 la parte apelada se comprometió a presentar una propuesta transaccional en o antes del 13 de mayo de 2024. Sin embargo, no cumplió con compromiso, el tribunal tuvo que intervenir y ordenar a la parte apelada a cumplir con su palabra. Igualmente, la parte apelada demostró una actitud de dejadez respecto al cumplimiento con los requerimientos de prueba cursados por la parte apelante. No obstante, la inadvertencia y luego de varias órdenes del foro primario, el 8 de julio de 2024 la parte apelada informó haber cumplido con el descubrimiento de prueba pendiente; presentó varias fechas para la celebración de deposiciones; y cursó al

apelante una oferta transaccional. En la vista del estado de los procedimientos del 13 de agosto de 2024, el foro de primera instancia concedió a las partes hasta el 15 de octubre de 2024 para anunciar peritos, y hasta el 30 de noviembre de 2024 para rendir informes periciales, y concedió a las partes hasta el 28 de febrero de 2025 para completar el descubrimiento de prueba. En la vista el foro primario también fijó la fecha para la *Conferencia con Antelación al Juicio y Vista Transaccional* para el 18 de marzo de 2025 pero el tribunal la recalendarizó para el 18 de enero de 2026 y luego para el 31 de enero de 2026.

La falta de diligencia del representante legal de la parte apelada con el calendario de descubrimiento de prueba y toma de deposiciones fijado en la vista continuó. Esto requirió múltiples comparecencias escritas de la parte apelante para solicitar la intervención del foro primario. Al final del año 2024 compareció la nueva representación legal de la parte apelada, el tribunal aceptó al nuevo abogado. El 3 de enero de 2025 la parte apelada compareció para anunciar que notificó a la parte apelante *Interrogatorios y Solicitud de Producción de Documentos* y que "interesa deponer a los siguientes: a. Rahelie de Jesús Huertas b. Carmelo Julio López Rosario c. Ing. Gabriel Hernández d. Anthony López, Northeast Contractors e. Lcdo. José Martínez, Notario Público". Por último, informó al tribunal que "estará anunciando en los próximos 45 días a un perito en el campo de valores de propiedades (tasador) y a un perito sobre el valor de la arena". La parte apelada comenzó a comparecer activamente ante el foro primario para finiquitar el calendario de toma de deposiciones pendiente, notificar requerimientos de producción de documentos, y presentar ante el foro primario desacuerdos entre las partes en torno al descubrimiento de prueba pendiente.

Así lo demuestra su comparecencia escrita ante el tribunal del 21 de febrero de 2025, 13 de junio de 2025, y 18 de junio de 2025, comparecencias en la cuales la parte apelada solicitó la intervención del tribunal con desacuerdos sobre el descubrimiento de prueba notificado por la parte apelante. Todavía así, los desacuerdos entre las partes respecto a la toma de deposiciones continuaron, una y otra parte requirió la intervención del tribunal. Tanto así que, el foro primario en la *Resolución* del 1 de julio de 2025 determinó que: "Las partes tienen 60 días para culminar e[l] descubrimiento de prueba. Toda prueba no descubierta en o antes de dicho término se presumirá adversa. El término concedido es final".

En la vista del 18 de septiembre de 2025, la parte apelante anunció que el descubrimiento de prueba "de la fase de los testigos", esto es las deposiciones anunciadas por ambas partes, había culminado. Solo quedó pendiente cierto descubrimiento de prueba documental. En la vista el foro primario hizo alusión a la *Sentencia* del 21 de abril de 2023 del Tribunal de Apelaciones (KLAN202300095), y en consecuencia concedió "45 días a las partes para que le informen si se utilizara o no la cláusula de arbitraje para ver el caso". Mediante la orden del 9 de octubre de 2025 el tribunal primario aclaró que "el término concedido de 45 días es para que pongan en posición al Tribunal si este tiene jurisdicción ante la cláusula de arbitraje". El 4 de noviembre de 2025 la parte apelada presentó un escrito en cumplimiento de orden en donde argumentó a favor de la puesta en vigor de la cláusula de arbitraje. Por lo cual solicitó la paralización del caso para dar oportunidad a las partes a presentar sus desacuerdos ante un árbitro. Ese mismo día compareció la parte apelante para argumentar que la parte apelada renunció a la cláusula de arbitraje, y que de todas formas no puede ahora aprovechar la

cláusula por incuria. Las partes intercambiaron una réplica y dúplica sobre el asunto. Finalmente, el 29 de diciembre de 2025 el foro primario emitió la sentencia apelada. En ella determinó eficaz la cláusula de arbitraje y concluyó que las partes no cumplieron con las obligaciones establecidas en la cláusula 18 del "Contrato de Compraventa de Membresías". Procedió a declararse sin jurisdicción sobre la materia y desestimó la demanda "decretando el archivo del presente caso sin perjuicio".

La parte apelante solicitó reconsideración, la apelada presentó oposición, y luego el apelante presentó una réplica. El foro primario denegó la reconsideración solicitada. Inconforme con el resultado, la parte apelante comparece ante este tribunal y señala los siguientes errores:

> Erró gravemente el Tribunal de Primera Instancia al desestimar la demanda por falta de jurisdicción, apartándose de la jurisprudencia normativa que establece, de acuerdo [con] los hechos, que hubo una clara renuncia a la cláusula de arbitraje contractual contenida en el contrato de adhesión producido por la apelada.

> Erró el Tribunal de Primera Instancia al declarar *No Ha Lugar* a la Moción de Reconsideración sometida por la parte apelante.

La parte apelada compareció mediante alegato escrito. Por tanto, procedemos a resolver este recurso con el beneficio de la comparecencia de las partes, el contenido del expediente electrónico y el derecho aplicable.

### -II-

### -A-

En ordenamiento jurídico es posible "que las partes en un contrato se obliguen a llevar ante un árbitro, mediante un procedimiento de arbitraje, las posibles controversias futuras relacionadas con su contrato". *S.L.G. Méndez-Acevedo v. Nieves Rivera*, 179 DPR 359, 366 (2010). "Por tal razón, el arbitraje es una

figura jurídica inherentemente contractual". *Íd.,* pág. 367. Es exigible cuando se ha pactado y conste por escrito. *Íd.* Acordado el arbitraje, será exigible e irrevocable, salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. *S.L.G. Méndez-Acevedo v. Nieves Rivera, supra,* págs. 366-367. Igualmente, una parte puede renunciar voluntaria o tácitamente a una cláusula de arbitraje cuando no levanta el asunto como defensa afirmativa, y no actuó afirmativamente durante el procedimiento judicial. Véase, *H.R., Inc. v. Vissepó & Diez Constr.,* 190 DPR 597 (2014). En Puerto Rico existe una fuerte política pública a favor del arbitraje, y que toda duda sobre si procede o no debe resolverse a favor de este. *VDE Corporation v. F & R Contractors,* 180 DPR 21, 36 (2010). Porque "el arbitraje constituye un medio más apropiado y deseable que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes, ya que es menos técnico, más flexible y menos oneroso. *H.R., Inc. v. Vissepó & Diez Constr., supra,* pág. 606. "[U]na vez acordado el arbitraje, los tribunales carecen de discreción respecto a su eficacia y tienen que dar cumplimiento al arbitraje acordado". *S.L.G. Méndez-Acevedo v. Nieves Rivera, supra,* pág. 368; *VDE Corporation v. F & R Contractors, supra,* pág. 36. Las partes obligadas contractualmente a presentar sus controversias a procedimientos de métodos alternos de resolución de conflictos deben agotarlos, salvo justa causa para obviarlos. *H.R., Inc. v. Vissepó & Diez Constr., supra,* pág. 606.

*-B-*

La incuria es la "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". *Alonso Piñero v. UNDARE, Inc.,* 199 DPR 32, 53 (2017); *Horizon v. Jta. Revisora, RA*

*Holdings*, 191 DPR 228, 236 (2014); *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 340 (2012). Esta norma aplica cuando no existe un término reglamentario o en ley para realizar determinada acción. *Consejo Titulares v. Ramos Vázquez, supra,* pág. 342; *Pueblo v. Valentín*, 135 DPR 245, 256 (1994). Su fin es evitar premiar a una parte que se cruza de brazos aun conociendo sobre la existencia de su derecho si con ello se causa perjuicio a la otra parte o se lesionan importantes intereses públicos o privado. *P.I.P. v. E.L.A. et al.*, 186 DPR 1, 13 (2012).

Esta doctrina procede de la máxima cuyo postulado establece que, la equidad auxilia a quien se mantiene vigilante en el reclamo de sus derechos, y no a quien se duerme sobre la corriente sin mostrar excusas razonables para ello. *Consejo Titulares v. Ramos Vázquez, supra*, págs. 340-341. Ahora bien, no opera automáticamente por el mero transcurso del tiempo. *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998, 1020 (2008). El Tribunal Supremo de Puerto Rico ha delineado una serie de consideraciones para evaluar la aplicabilidad de la doctrina de incuria:

> Su aplicación dependerá de la situación específica que presente cada caso. Ello exige que en nuestro análisis consideremos los factores siguientes: primero, si existe alguna justificación para la demora; segundo, el perjuicio que esta acarrea, y tercero, el efecto sobre los intereses privados o públicos involucrados. La evaluación de estos factores es primordial al considerar resolver conforme a equidad.
>
> *Alonso Piñero v. UNDARE, Inc., supra*, pág. 54; *Consejo Titulares v. Ramos Vázquez, supra*, pág. 341.

También debe evaluarse: (1) la dilación injustificada en la presentación del recurso y (2) el perjuicio que ello pueda ocasionar a otras personas. *Consejo Titulares v. Ramos Vázquez, supra*, pág. 342; *Torres Arzola v. Policía de P.R.*, 117 DPR 204, 209 (1986).

### -III-

La parte apelante reclama el pago de la obligación contenida en un *pagaré* con fecha 12 de abril de 2021 suscrito por la parte apelada garantizado mediante hipoteca debidamente constituida en igual fecha. La parte apelada reclama daños contractuales al quedar frustrado su negocio por el supuesto incumplimiento de la parte apelante con una de las prestaciones del acuerdo. La controversia del presente recurso apelativo surge del contrato titulado *Contrato de Compraventa de Membresías* del 12 de abril de 2021. Las cláusulas 18 y 19 del contrato suscrito leen:

> 18. Resolución Alternativa de Conflictos De surgir cualquier controversia con relación al CONTRATO, sus términos y condiciones, la interpretación o su aplicación, y que la controversia no pueda ser resuelto luego de realizar esfuerzos razonables, se utilizará la MEDIACIÓN DE CONFLICTOS o el ARBITRAJE no vinculante previo al comienzo de cualquier acción legal en un Tribunal. La PARTE interesada, someterá notificación escrita a la otra, detallando la controversia y certificando que la misma no pudo ser resulta mediante la negociación directa entre las PARTES. En un término no mayor a sesenta (60) días luego de la notificación, las PARTES seleccionarán en conjunto un MEDIADOR o un ÁRBITRO y se someterán al proceso de buena fe.

> 19. Selección de Foro Luego de que las PARTES realicen los esfuerzos razonables y agoten el remedio de RESOLUCIÓN ALTERNATIVA DE CONFLICTOS para solucionar cualquier controversia relacionada al CONTRATO, su incumplimiento y, interpretación o aplicación, las PARTES se someten expresamente a la jurisdicción de la sala con competencia del Tribunal de Primera Instancia de San Juan, foro para dilucidar cualquier litigio.

No existe duda, de ordinario las partes están obligadas a cumplir con el arbitraje pactado por escrito. Esa obligación nace del principio de la buena fe. *Hope Tucker v. Money Grp., LLC*, 2026 TSPR 9, 19, 2017 DPR __ (2026); *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 41–42 (2011). No obstante, como vimos, es posible renunciar al pacto de arbitraje. La parte apelante

argumenta que, la parte apelada renunció a la cláusula contractual de arbitraje. En Puerto Rico existen excepciones a la obligatoriedad de arbitrar, entre ellas cuando las partes renuncian voluntariamente, o mediante sus actos, al derecho de arbitrar sus reclamos. Véase, *H.R. Inc. v. Vissepó & Diez Constr.*, *supra*; *Vélez v. Serv. Legales de P.R.*, Inc., 144 DPR 673 (1998).

Es derecho conocido que cuando las partes pactan el arbitraje y este derecho se reclama en la primera alegación responsiva, lo que procede es detener los procedimientos ante el tribunal y someter el asunto a arbitraje. Pero, esta no es la situación que nos ocupa en el caso de epígrafe. Hoy nos corresponde resolver la situación cuando un demandado plantea por primera vez el derecho a arbitraje luego de contestar la demanda, durante el descubrimiento de prueba, y luego de múltiples gestiones en el proceso judicial. para que una parte prevalezca en su alegación de que la parte demandada renunció a su derecho de arbitraje, no basta con alegar que la parte demandada no reclamó ese derecho entre las defensas afirmativas. *H.R. Inc. v. Vissepó & Diez Constr.*, *supra*, pag. 610-13. La parte deberá probar además que la parte demandada realizó actos afirmativos sin reclamar previamente su derecho a arbitraje. *Íd.*

En conclusión, el simple acto de contestar la demanda sin mencionar el derecho a arbitraje no implica per se una renuncia a tal derecho. *Íd.* Para que este derecho se entienda renunciado, el demandado deberá, además, haber utilizado afirmativamente el sistema judicial conociendo que tenía un derecho a arbitrar, el cual no reclamó previamente. *Íd.* Sin embargo, ello no impide que los tribunales puedan decretar, por ejemplo, que, debido a la etapa avanzada de los procedimientos, el demandado incurrió en mala fe o incuria al alegar su derecho a arbitraje. *Íd.* Cumplidos ambos

requisitos debe concluirse que, la parte renunció a su derecho de arbitrar. *Íd.*

En cuanto al primer requisito, no existe duda, la parte apelada no incluyó tal defensa en primera alegación responsiva, esto es, en la contestación a la demanda. En cuanto al segundo escalón, el contenido del expediente electrónico nos lleva a concluir que, la parte apelada participó y actuó afirmativamente en el procedimiento judicial. Presentó una reconvención, notificó interrogatorios y requerimientos de prueba documental, tomó deposiciones a testigos, hizo una oferta transaccional, celebró reuniones con la parte apelante para llegar a distintos acuerdos sobre el descubrimiento de prueba, y cursó una oferta transaccional a la parte apelante. También anunció la intención de contratar varios peritos para el caso y presentar informes periciales. Compareció multiplicidad de veces ante el foro de primera instancia para solicitar auxilio ante desacuerdos con la parte apelante en el procedimiento de descubrimiento de prueba, inclusive solicitó sanciones en contra de la parte apelante.

Las actuaciones afirmativas de la parte apelada constituyen una renuncia a su derecho a arbitrar. El pleito comenzó el 18 de agosto de 2021, y la primera comparecencia de la parte apelada ocurrió el 17 de diciembre de 2021. En su primera alegación no invocó tal derecho, y no solicitó la suspensión de los procedimientos hasta después de culminado el arbitraje pactado en el contrato. *McGregor-Doniger v. Tribunal Superior*, *supra*, págs. 869–870. Desde entonces la parte apelada puso en marcha la maquinaria propia de la litigación. Sus actuaciones subsiguientes fueron afirmativas e inconsistentes con su posición actual en insistir en el arbitraje. *Íd.* Agregue que, el trámite del caso está en una etapa muy avanzada, tanto así que, el descubrimiento de

prueba culminó, y solo resta la celebración de la conferencia con antelación al juicio.

En suma, la parte apelada realizó múltiples actos afirmativos en consecución de culminar todo procedimiento previo al juicio, sin reclamar su derecho, actuaciones incompatibles con el proceso de arbitraje. *H.R., Inc. v. Vissepo & Diez Constr.*, *supra*, págs. 610-613. En consecuencia, la conducta exhibida por la parte apelada durante el procedimiento impide que ahora trate de poner en vigor la cláusula de arbitraje.

*-B-*

Quedó comprobado que, en el presente caso la parte apelada no mencionó su derecho de arbitraje en su primera comparecencia al contestar la demanda, y actuó afirmativamente durante el trámite del caso. La primera mención de la cláusula de arbitraje ocurrió en la vista del 18 de septiembre de 2025, donde el tribunal por iniciativa propia requirió a las partes expresarse sobre el asunto. En aquel momento el descubrimiento de prueba había culminado y solo pendía la celebración de la conferencia con antelación a juicio. Las partes tenían, o debían tener su caso ya listo para juicio. Por tanto, concluimos que, la parte apelada también incurrió en mala fe e incuria al alegar su derecho a arbitrar a destiempo después de más de cuatro años de litigio. Fue en dicho periodo en el cual participó activamente en el caso, y provocó considerables gastos a la parte apelante durante el descubrimiento de prueba. Debido a su poca diligencia en el descubrimiento de prueba ocasionó la comparecencia frecuente de la parte apelante ante el foro primario para reclamar el cumplimiento a la parte apelada con los acuerdos alcanzados respecto al descubrimiento de prueba, a contestar interrogatorios, comparecer a deposiciones preprogramadas y producir prueba documental.

Añada que, en *Rivera v. Depto. de Servicios Sociales*, 132 DPR 240, 247 (1992), el Tribunal Supremo estableció que, en adición al transcurso del tiempo, se deben tomar, "la justificación, si alguna, de la demora incurrida". La parte apelada no ofrece justificación para su demora en reclamar la puesta en vigor de la cláusula de arbitraje. Del expediente surge claramente que, la parte apelada no realizó alegación o petición alguna de arbitraje hasta requerido por el propio tribunal. En momento alguno acreditó justa causa para la tardanza en la presentación de su defensa. *Alonso Pinero v. UNDARE, Inc.*, 199 DPR 32, 54 (2017); *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 349 (2012).

Es norma que, "a nadie es lícito ir contra los actos propios tiene fundamento y raíz en el principio general de Derecho que ordena proceder de buena fe en la vida jurídica". *Int. General Electric v. Concrete Builders*, 104 DPR 871, 877 (1976). La eficacia de la doctrina y su fuerza vinculante tienen vida y efecto propios, que van en protección de la confianza depositada en la apariencia, que es por extensión protección de un interés social o la consecución de un ideal de justicia. La conducta desplegada por la parte apelada durante los años del presente litigio, a todas luces, indicó su intención de culminar todos los trámites necesarios anteriores al juicio, y creo una expectativa en la parte apelante que efectivamente el caso llegaría a juicio. La parte apelada quedó vinculada a las consecuencias de sus propios actos.

En todo momento, sus actuaciones en el foro judicial indicaron su clara intención de obtener una sentencia su favor, al acumular prueba, al anunciar peritos e informes periciales, al buscar el auxilio judicial para completar sus metas durante el descubrimiento de prueba. Ahora está impedido de deshacer todo el esfuerzo consecuente del tribunal, de la parte apelante. Todo justo antes del señalamiento del juicio. "La conducta contradictoria

no tiene lugar en el campo del Derecho, y debe ser impedida". *Caquías v. Asoc. Res. Mansiones Río Piedras*, supra, pág. 212

Por tanto, erró el foro primario al no considerar la casuística y el contenido del propio expediente electrónico, antes de emitir la sentencia apelada. La parte apelada renunció al derecho de arbitraje y el litigio debe proseguir su curso ordinario.

### *-IV-*

Por los fundamentos antes expuestos, los cuales hacemos formar parte de este dictamen, *revocamos* la sentencia apelada y ordenamos la continuación de los procedimientos ante el foro primario de forma compatible con esta sentencia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones